JUDITH A. PHILIPS
Acting United States Attorney
District of Hawaii

**ORIGINAL**

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 20 2021

at /2 o'clock and 25 min. P M
CLERK, U.S. DISTRICT COURT

MICHAEL NAMMAR
Chief, Criminal Division

MOHAMMAD KHATIB
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
Email:      Mohammad.Khatib@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CR. NO. 21-00089 JMS |
| ) | |
| Plaintiff, ) | MEMORANDUM OF PLEA |
| ) | AGREEMENT |
| vs. ) | |
| ) | DATE: July 20, 2021 |
| ) | TIME: 10:00 a.m. |
| ASIA JANAY LAVARELLO, ) | JUDGE: Hon. J. Michael Seabright |
| ) | |
| Defendant. ) | |
| ) | |
| _____ ) | |

## <u>MEMORANDUM OF PLEA AGREEMENT</u>

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the

UNITED STATES OF AMERICA, by its attorney, the Acting United States

Attorney for the District of Hawaii, and the defendant, ASIA JANAY

LAVARELLO, and her attorney, Birney B. Bervar, Esq., have agreed upon the following:

## THE CHARGES

1.    The defendant acknowledges that she has been charged in an Information with violating Title 18, United States Code, Section 1924.

2.    The defendant has read the charges against her contained in the Information, and those charges have been fully explained to her by her attorney.

3.    The defendant fully understands the nature and elements of the crime with which she has been charged.

## THE AGREEMENT

4.    The defendant agrees to waive indictment and enter a voluntary plea of guilty to the Information, which charges her with unauthorized removal and retention of classified documents or material.   The defendant is aware that she has the right to have this felony asserted against her by way of grand jury indictment. The defendant hereby waives this right and consents that this offense may be charged against her by way of the Information.   The defendant also consents to the factual stipulations set forth in paragraph 9 and its subparagraphs.   In addition, the defendant waives certain of her rights to direct appeal and collateral attack as set forth in paragraph 14 and its subparagraphs.

2

5.      In return, the government agrees not to charge the defendant with additional violations related to the mishandling of classified documents or material that are now known to the government.   The government also agrees not to charge the defendant with any false statements made on January 22, 2021, to agents of the Federal Bureau of Investigation or to any other federal agent involved in this investigation.   The government further agrees to recommend that the defendant receive credit for acceptance of responsibility as set forth in paragraph 11 and its subparagraphs.

6.      The defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

7.      The defendant enters this plea because she is in fact guilty of unauthorized removal and retention of classified documents or material as charged in the Information, and she agrees that this plea is voluntary and not the result of force or threats.

## **PENALTIES**

8.      The defendant understands that the penalties for the offense to which she is pleading guilty include:

a.      A term of imprisonment of not more than 5 years and a fine of up to $250,000, plus a term of supervised release of not more than 3 years.

3

b.      In addition, the Court must impose a $100 special assessment as to each count to which the defendant is pleading guilty.   The defendant agrees to pay $100 for each count to which she is pleading guilty to the District Court's Clerk's Office, to be credited to said special assessments, before the commencement of any portion of sentencing.   The defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the prosecution will allow, though not require, the prosecution to withdraw from this Agreement at its option.

### FACTUAL STIPULATIONS

9.      The defendant admits the following facts and agrees that they are not a detailed recitation, but merely an outline of what happened in relation to the charge to which the defendant is pleading guilty:

**Background**

a.      Executive Order 13526, signed by President Barack Obama on December 29, 2009, provides a uniform system for classifying, safeguarding and declassifying national security information.   Executive Order 13526 categorizes classified information into three general levels.   Information may be classified as "CONFIDENTIAL" if the unauthorized disclosure of the information "reasonably could be expected to cause damage to the national security."   E.O. 13526

4

1.2(a)(3).   Information may be classified as "SECRET" if the unauthorized disclosure of the information "reasonably could be expected to cause serious damage to the national security."   E.O 13526 1.2(a)(2).   Information may be classified as "TOP SECRET" if the unauthorized disclosure of the information "reasonably could be expected to cause exceptionally grave damage to the national security." E.O. 13526 1.2(a)(1).

       b.      32 C.F.R. Parts 2001 and 2003 regulate the handling of classified information.   Specifically, 32 C.F.R. § 2001.43, titled "Storage," regulates the physical protection of classified information.   This section provides that "SECRET" and "TOP SECRET" information "shall be stored in a GSA-approved security container, a vault built to Federal Standard (FHD STD) 832, or an open storage area constructed in accordance with § 2001.53."   It also requires periodic inspection of the container and the use of an Intrusion Detection System, among other things.

       c.      ASIA JANAY LAVARELLO, the defendant, was a Department of Defense civilian employee since approximately January 2011. Beginning in approximately March 2018, she was the Executive Assistant to the Commander for the United States Indo-Pacific Command ("INDOPACOM") Joint Intelligence Operation Center ("JIOC").   During that time, she maintained a "TOP

SECRET" security clearance.   The defendant has also held secure compartmented information ("SCI") access at various times since at least January 2011.

      d.     As someone holding a "TOP SECRET" security clearance, the defendant had been given multiple security briefings concerning the handling, marking, storage, transportation, and restrictions regarding the disclosure of information concerning the national defense or foreign relations of the United States ("classified information").   All persons, before they obtain a high-level security clearance, are required to sign certain forms affirming that they have been instructed on the requirements for the proper handling of classified materials.   The defendant signed such forms on March 19, 2018, as part of her U.S. Government INDOPACOM JIOC duties.   By signing these certification documents, the defendant acknowledged she understood her responsibilities regarding the handling, transportation, and protection of classified information.

      e.     On January 4, 2020, the defendant was accepted for a six-month Temporary Duty Assignment ("TDY") to be the JIOC embedded employee to the Armed Forces Philippines Office of the J2 in the Philippines.   In that role, she was assigned to work at Camp Aguinaldo and the U.S. Embassy Manila.   The defendant's supervisor for the TDY was located at USINDOPACOM JIOC in Honolulu, Hawaii, but the defendant also reported to the U.S. Embassy Manila

6

Defense Attaché Office (DAO).   Throughout this time, the defendant was also a student of National Intelligence University ("NIU") and was working on her thesis project.

      f.     While in the Philippines, the defendant had access to the secure compartmented information facility ("SCIF") at the U.S. Embassy Manila to use U.S. Government classified computers and to store classified documents.   As part of the defendant's official duties, she attended classified meetings every Wednesday at the U.S. Embassy Manila, had access to classified materials, and had additional meetings during the week, as needed.

### Unauthorized removal and retention of classified material in hotel room

      g.     On March 20, 2020, the defendant was working in the U.S. Embassy Manila DAO SCIF.   At the end of the day, the defendant removed certain classified documents, which she had printed, from that secure location.

      h.     Later that same day, the defendant hosted a dinner party in her hotel room.   The guests included three Americans who also worked at the U.S. Embassy Manila.   Also present in the defendant's hotel room that evening, were two foreign nationals with whom the defendant had close and continuing contact.

      i.     During the dinner party, one of the American guests discovered a stack of documents in the defendant's bedroom with U.S. Government marked

classified markings on them, including documents classified at the "SECRET" level.   When confronted, the defendant explained the documents were for her NIU thesis.   The defendant took no steps to return the classified documents to the U.S. Embassy Manila DAO SCIF that night.

      j.    On March 22, 2020, one of the American dinner party guests helped the defendant secure the previously mentioned classified documents in a "SECRET" classified safe inside the U.S. Embassy Manila.   The defendant said she would return to the U.S. Embassy Manila the following day to retrieve the classified documents and properly secure them in the DAO SCIF.   As of March 24, 2020, the defendant had not returned to retrieve the classified documents. Instead, the classified documents were returned to the DAO SCIF to be secured in a "TOP SECRET" safe by others.

      k.    In late March 2020, the defendant's TDY to Manila was terminated due to the defendant's mishandling of "SECRET" classified documents on March 20, 2020, a violation of Department of State regulation 12 FAM 539.1(h).

## Unauthorized removal of classified notebook and transport to Hawaii

l.     During her TDY at the U.S. Embassy Manila, the defendant took handwritten notes in a notebook ("the Notebook"), which contained facts and information classified at the "CONFIDENTIAL" and "SECRET" levels.

m.     After the March 20, 2020 security incident, but prior to the defendant's departure from Manila at the end of the month, the defendant asked if the U.S. Embassy Manila could mail some of her items back to Honolulu.   The defendant was told that the U.S. Embassy Manila could mail the items.   The defendant ultimately did not provide anything for the embassy to mail for her, and the defendant herself never mailed any classified documents or notebooks securely by diplomatic pouch from the U.S. Embassy Manila to INDOPACOM in Hawaii.

n.     On or about March 28, 2020, the defendant, without authorization, knowingly possessed and transported the Notebook containing information classified at the "CONFIDENTIAL" and "SECRET" levels, from the Philippines to Honolulu, Hawaii.   The defendant then intentionally retained the Notebook and the classified information it contained for a period of at least two weeks at her personal residence.   The defendant's personal residence, as she well knew, was not an authorized location for the storage of classified information. At some point between April 13, 2020 and June 27, 2020, the defendant moved the

9

Notebook to her new workspace located at the INDOPACOM JIOC building in
Honolulu, Hawaii.

    o.  On June 27, 2020, a Naval Criminal Investigative Service
("NCIS") Command Authorization for Search and Seizure Warrant was executed
at the defendant's desk at the JIOC in Honolulu. During the covert search, the
Notebook was located in the defendant's top desk drawer. "US DAO Manila C/O
Asia Lavarello" was handwritten on the first page. The Notebook contained
handwritten notes which included dates and titles of meetings. The Notebook was
copied and sent to U.S. Government Agency-1 for a classification review. After
copying, the Notebook was returned to the defendant's top desk drawer. U.S.
Government Agency-1 conducted a classification review of the Notebook and
determined that it contained classified material at the "CONFIDENTIAL" and
"SECRET" levels.

### Prior use of unsecured email to transmit classified information from the Notebook

    p.  On January 16, 2020, the defendant used her personal Gmail
account to send an email titled "Notes Week of 13 Jan 2020" to her unclassified
U.S. Government Agency-1 email account. The email contained a section with
the header "US Embassy Pol/Mil Meeting – 15 Jan 2020." The Notebook
contained a page similarly titled "USEMB Pol/Mil Meeting 1/15/2020." The

10

Notebook also contained nearly identical information as that written in the defendant's January 16 email.

q.     U.S. Government Agency-1 conducted a classification review of the January 16, 2020 email.   The agency determined the email section with the header "US Embassy Pol/Mil Meeting – 15 Jan 2020" contained information with an overall classification at the "SECRET" level.   The FBI determined that the defendant possessed the Notebook at an unauthorized location when she drafted the January 16 email.

**False statements to the Federal Bureau of Investigation**

r.     On January 22, 2021, the defendant agreed to a non-custodial voluntary interview with the FBI and NCIS.   At the beginning of the interview, the FBI advised the defendant it was a crime to lie to a federal agent.

s.     During the interview, the defendant named "Maria" as being one of two foreign nationals who was present in her hotel room in Manila during the dinner party on March 20, 2020.   The FBI asked if the defendant had filed a "contact report" for "Maria."   The defendant responded in the affirmative knowing this was a false statement.   In fact, the defendant never reported "Maria" as a foreign contact as required.   The FBI also asked the defendant if she had any foreign contacts that she had not reported.   The defendant responded in the

11

negative knowing this too was a false statement.   In fact, the defendant had close and continuing contacts with two other foreign nationals while in the Philippines whom she had not reported as required.

t.     The FBI asked the defendant whether she had removed any materials from the JIOC to work on her NIU thesis since her return from the Philippines.   The defendant responded "no, I think the experience [of having been removed from her TDY position in the Philippines], definitely uh more aware," knowing this was a false statement.   The FBI reminded the defendant of her obligation to tell the truth to federal agents under 18 U.S.C. § 1001.   Still, the defendant maintained "I mean I'm not intending to lie to you, sorry if you feel that I'm lying to you.   I'm telling things as I remember them. Uhm but I think I don't want to answer any more questions."   In fact, between June 11 and June 15, 2020, the defendant had not only printed a portion of her NIU thesis, removed it from the JIOC, and worked on her NIU thesis from her home, but she also removed the classification headers and footers from the document.

10.     Pursuant to CrimLR 32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the parties agree that the charge to which the defendant is pleading guilty adequately reflects the seriousness of the actual

offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

## SENTENCING STIPULATIONS

11.     Pursuant to CrimLR 32.1(b) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of the defendant in connection with this matter:

a.      As of the date of this agreement, it is expected that the defendant will enter a plea of guilty prior to the commencement of trial, will truthfully admit her involvement in the offense and related conduct, and will not engage in conduct that is inconsistent with such acceptance of responsibility.   If all of these events occur, and the defendant's acceptance of responsibility continues through the date of sentencing, a downward adjustment of 2 levels for acceptance of responsibility will be appropriate.   *See* U.S.S.G. § 3E1.1(a) and Application Note 3.

b.      The United States Attorney agrees that the defendant's agreement herein to enter into a guilty plea constitutes notice of intent to plead guilty in a timely manner, so as to permit the government to avoid preparing for trial as to the defendant.   Accordingly, the United States Attorney anticipates

13

moving in the Government's Sentencing Statement for a one-level reduction in sentencing offense level pursuant to Guideline § 3E1.1(b)(2), if the defendant is otherwise eligible.   The defendant understands that notwithstanding its present intentions, and still within the Agreement, the prosecution reserves the rights (1) to argue to the contrary in the event of receipt of new information relating to those issues, and (2) to call and examine witnesses on those issues in the event that either the United States Probation Office finds to the contrary of the prosecution's intentions or the Court requests that evidence be presented on those issues.

      c.    The parties agree that the defendant's false statements to the FBI, as detailed in paragraph 9, subparagraphs r – t, did not significantly obstruct or impede the FBI's investigation of the offenses committed by the defendant as to qualify for the enhancement under Section 3C1.1 of the Sentencing Guidelines.

      d.    The parties agree that for purposes of calculating the base offense level under Section 2M3.4 of the Sentencing Guidelines, the offenses committed by the defendant did not involve top secret information.

      12.    The parties agree that notwithstanding the parties' Agreement herein, the Court is not bound by any stipulation entered into by the parties but may, with the aid of the presentence report, determine the facts relevant to sentencing.   The parties understand that the Court's rejection of any stipulation between the parties

14

does not constitute a refusal to accept this Agreement since the Court is expressly

not bound by stipulations between the parties.

## DISPUTED FACTS

13.     Pursuant to Section 6B1.1 of the Sentencing Guidelines, the parties

identify the following facts that are in dispute for the purpose of sentencing of the

defendant in connection with this matter:

        a.     The parties have not reached an agreement regarding whether

the defendant abused a position of trust under Section 3B1.3 of the Sentencing

Guidelines for purposes of calculating the total offense level.

## APPEAL/COLLATERAL REVIEW

14.     The defendant is aware that she has the right to appeal her conviction

and the sentence imposed.   The defendant knowingly and voluntarily waives the

right to appeal, except as indicated in subparagraph "b" below, her conviction and

any sentence within the Guidelines range as determined by the Court at the time of

sentencing, and any lawful restitution order imposed, or the manner in which the

sentence or restitution order was determined, on any ground whatsoever, in

exchange for the concessions made by the prosecution in this Agreement.   The

defendant understands that this waiver includes the right to assert any and all

legally waivable claims.

15

a.     The defendant also waives the right to challenge her conviction or sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except that the defendant may make such a challenge (1) as indicated in subparagraph "b" below, or (2) based on a claim of ineffective assistance of counsel.

b.     If the Court imposes a sentence greater than specified in the guideline range determined by the Court to be applicable to the defendant, the defendant retains the right to appeal the portion of her sentence greater than specified in that guideline range and the manner in which that portion was determined and to challenge that portion of her sentence in a collateral attack.

c.     The prosecution retains its right to appeal the sentence and the manner in which it was determined on any of the grounds stated in Title 18, United States Code, Section 3742(b).

## FINANCIAL DISCLOSURE

15.     In connection with the collection of restitution or other financial obligations that may be imposed upon her, the defendant agrees as follows:

a.     The defendant agrees to fully disclose all assets in which she has any interest or over which she exercises control, directly or indirectly,

16

including any assets held by a spouse, nominee, or third party.   The defendant understands that the United States Probation Office (USPO) will conduct a presentence investigation that will require the defendant to complete a comprehensive financial statement.   To avoid the requirement of the defendant completing financial statements for both the USPO and the government, the defendant agrees to truthfully complete a financial statement provided to the defendant by the United States Attorney's Office.   The defendant agrees to complete the disclosure statement and provide it to the USPO within the time frame required by the United States Probation officer assigned to the defendant's case.   The defendant understands that the USPO will in turn provide a copy of the completed financial statement to the United States Attorney's Office.   The defendant agrees to provide written updates to both the USPO and the United States Attorney's Office regarding any material changes in circumstances, which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances.   The defendant's failure to timely and accurately complete and sign the financial statement, and any written update thereto, may, in addition to any other penalty or remedy, constitute the defendant's failure to accept responsibility under U.S.S.G § 3E1.1.

b.      The defendant expressly authorizes the United States Attorney's Office to obtain her credit report.   The defendant agrees to provide waivers, consents, or releases requested by the United States Attorney's Office to access records to verify the financial information, such releases to be valid for a period extending 90 days after the date of sentencing.   The defendant also authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the USPO.

c.      Prior to sentencing, the defendant agrees to notify the Financial Litigation Unit of the U.S. Attorney's Office before making any transfer of an interest in property with a value exceeding $1,000 owned directly or indirectly, individually or jointly, by the defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations.

### IMPOSITION OF SENTENCE

16.    The defendant understands that the District Court in imposing sentence will consider the provisions of the Sentencing Guidelines.   The defendant agrees that there is no promise or guarantee of the applicability or non-applicability of any Guideline or any portion thereof, notwithstanding any representations or predictions from any source.

18

17.   The defendant understands that this Agreement will not be accepted or rejected by the Court until there has been an opportunity by the Court to consider a presentence report, unless the Court decides that a presentence report is unnecessary.   The defendant understands that the Court will not accept an agreement unless the Court determines that the remaining charge adequately reflects the seriousness of the actual offense behavior and accepting the Agreement will not undermine the statutory purposes of sentencing.

## WAIVER OF TRIAL RIGHTS

18.   The defendant understands that by pleading guilty she surrenders certain rights, including the following:

a.   If the defendant persisted in a plea of not guilty to the charges against her, then she would have the right to a public and speedy trial.   The trial could be either a jury trial or a trial by a judge sitting without a jury.   The defendant has a right to a jury trial.   However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the prosecution, and the judge all must agree that the trial be conducted by the judge without a jury.

b.   If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random.   The defendant and her attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual

19

bias or other disqualification is shown, or without cause by exercising peremptory challenges.   The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty.   The jury would be instructed that the defendant is presumed innocent, and that it could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt.

      c.     If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of the defendant's guilt beyond a reasonable doubt.

      d.     At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against the defendant.   The defendant would be able to confront those prosecution witnesses and her attorney would be able to cross-examine them.   In turn, the defendant could present witnesses and other evidence on her own behalf.   If the witnesses for the defendant would not appear voluntarily, the defendant could require their attendance through the subpoena power of the Court.

      e.     At a trial, the defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify.

20

19.     The defendant understands that by pleading guilty, she is waiving all of the rights set forth in the preceding paragraph.   The defendant's attorney has explained those rights to her, and the consequences of the waiver of those rights.

## USE OF PLEA STATEMENTS

20.     If, after signing this Agreement, the defendant decides not to plead guilty as provided herein, or if the defendant pleads guilty but subsequently makes a motion before the Court to withdraw her guilty plea and the Court grants that motion, the defendant agrees that any admission of guilt that she makes by signing this Agreement or that she makes while pleading guilty as set forth in this Agreement may be used against her in a subsequent trial if the defendant later proceeds to trial.   The defendant voluntarily, knowingly, and intelligently waives any protection afforded by Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence regarding the use of statements made in this Agreement or during the course of pleading guilty when the guilty plea is later withdrawn.   The *only* exception to this paragraph is where the defendant fully complies with this Agreement but the Court nonetheless rejects it. Under those circumstances, the United States may not use those statements of the defendant for any purpose.

21

21.     The defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of the defendant's conduct regarding the charges against her, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

22.     The defendant and her attorney acknowledge that, apart from any written proffer agreements, if applicable, no threats, promises, agreements or conditions have been entered into by the parties other than those set forth in this Agreement, to induce the defendant to plead guilty.   Apart from any written proffer agreements, if applicable, this Agreement supersedes all prior promises, agreements or conditions between the parties.

23.     To become effective, this Agreement must be signed by all signatories listed below.

//

//

//

//

//

//

22

24.   Should the Court refuse to accept this Agreement, it is null and void

and neither party shall be bound thereto.

DATED:   Honolulu, Hawaii, _____July 14, 2021___.

AGREED:

JUDITH A. PHILIPS
Acting United States Attorney
District of Hawaii


_____
MICHAEL NAMMAR
Chief, Criminal Division


_____
MOHAMMAD KHATIB
Assistant U.S. Attorney


_____
BIRNEY B. BERVAR
Attorney for Defendant


_____
ASIA JANAY LAVARELLO
Defendant

23